UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

|  |  |  |
|---|---|---|
| KARA R. DAMES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:16-CV-00080-NCC |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Kara R. Dames ("Plaintiff") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* and 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 17) and Defendant has filed a brief in support of the Answer (Doc. 24). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 8).

## I. PROCEDURAL HISTORY

On October 3, 2013, Plaintiff filed an application for SSI and DIB under Titles II and XVI of the Social Security Act (Tr. 182-94). On January, 28 2014, Defendant issued a Notice of Disapproved Claim (Tr. 85-95). Plaintiff filed a Request for Hearing before an Administrative

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Law Judge on February 25, 2014 (Tr. 103-04). After a hearing, by decision dated July 24, 2015, the ALJ found Plaintiff not disabled (Tr. 8-27). In a decision dated September 17, 2016 the Appeals Council denied Plaintiff's request for review (Tr. 1-6). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ found Plaintiff has the severe impairments of obesity, cognitive disorder, status-post brain cancer with treatment by chemotherapy and radiation and with residuals such as partial hearing loss, deep vein thrombosis of the right lower extremity and diabetes mellitus with early peripheral neuropathy (Tr. 13). The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14).

The ALJ determined Plaintiff has the Residual Functional Capacity ("RFC") to perform sedentary work,[2] except she can never climb ladders, ropes, or scaffolds; she can occasionally climb ramps and stairs; she can occasionally stoop, kneel, crouch, and crawl (Tr. 16). She must avoid working at unprotected heights and around dangerous machinery (*Id.*). She must work in an environment with moderate or less noise level, and is limited to simple routine tasks and simple work-related decisions (*Id.*). She can have only occasional interaction with the public and co-workers (*Id.*). The ALJ determined Plaintiff is unable to perform any past relevant work (Tr.

---

[2] Sedentary work:

involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a); 20 C.F.R. § 416.967(a).

2

20). The ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform including circuit board screener, assembler, and semi-conductor bonder (Tr. 21). Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 22). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision (Doc. 17).

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d).

If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's

conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises three issues. First, Plaintiff asserts that the ALJ erred in finding Plaintiff's cognitive disorder did not equal listing 12.02 (Doc. 17 at 12). Second, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence (*Id.* at 17). Third, Plaintiff asserts that the ALJ erred in failing to give the medical opinion of treating physician, Dr. Naman Ghazal-Albar, controlling weight (*Id.* at 23).[3] For the following reasons, the Court finds that Plaintiff's argument is without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

**A. Listing 12.02**

First, Plaintiff asserts that the ALJ erred in finding Plaintiff's cognitive disorder did not equal listing 12.02 (Doc. 17 at 12). "The claimant has the burden of proving that [her] impairment meets or equals a listing." *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010) (internal quotations and citations omitted). Listing 12.02 addresses organic mental disorders, which are "[p]sychological or behavioral abnormalities associated with a dysfunction of the brain." 20 C.F.R. pt. 202, subpt. P, app. 1, § 12.02 (effective Aug. 12, 2015 to May 23, 2016). The required level of severity for these disorders is met when the requirements in both part A and part B are satisfied. *Id.* In this case, only the B criteria are at issue. The B criteria is satisfied when at least two of the following are present:

    1. Marked restriction of activities of daily living; or

---

[3] The parties do not dispute that Dr. Ghazal-Albar is Plaintiff's treating physician (*See* Docs. 17 at 23, 24 at 22).

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

*Id.* A "marked" limitation is "more than moderate but less than extreme." *Id.* § 12.00.C. "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." *Id.* Plaintiff does not dispute that whether she has an episode of decompensation, the parties concur that she has not, therefore the Court will only address the other three criteria.

**1. Activities of Daily Living**

First, the ALJ properly determined that Plaintiff has "moderate restriction" in her activities of daily living (Tr. 15). The ALJ noted that Plaintiff reported in her adult function report that "she helped care for a dog, prepared meals, cleaned the house, did laundry, shopped for food and clothes, exercised at the YMCA, and helped care for her younger brother when her parents were away" (Tr. 15, 246-248). Further, contrary to Plaintiff's assertion, the ALJ considered Plaintiff's mother's testimony, indeed appearing to find more than a mild restriction in Plaintiff's activities of daily living largely based on the testimony (Tr. 15). Specifically, the ALJ noted "her mother testified that the [Plaintiff] rarely finished the items on her [to do] list, needs reminders for personal care, and needs cueing to perform tasks and follow instructions. Considering all of these reports, the undersigned finds moderate restriction in activities of daily living" (Tr. 15, 58-61). Also, while Plaintiff argues that the ALJ improperly excluded any mention that the medical records include multiple accounts where medical professionals indicate they have to communicate with Plaintiff's mother, rather than Plaintiff, regarding her medical

care, the inability to remember, or appropriately respond regarding, complicated medical information does not necessarily mean Plaintiff is more restricted in her activities of daily living than as determined by the ALJ (Tr. 421, 525). When taken in context with Plaintiff's abilities, the Court finds that the ALJ's determination that Plaintiff has moderate restriction in the area of activities of daily living is supported by substantial evidence. *See Good Buffalo v. Colvin*, No. 2:14 CV 91 JMB, 2015 WL 5568042, at *14 (E.D. Mo. Sept. 22, 2015) (finding the ALJ's determination that Plaintiff has only mild restrictions in the area of daily living supported by substantial evidence when, although Plaintiff needed reminders for personal care and medications, he reported mowing the lawn, helping with household chores, exercising, running errands, doing home repairs, watching television, and using the computer).

**2. Social Functioning**

Second, the ALJ properly found that Plaintiff has "moderate difficulties" in social functioning (Tr. 15). In doing so, the ALJ noted that in her adult function report, Plaintiff indicated that "she went to the YMCA to exercise, shopped for food and clothes, spent time with family and friends, attended church, and attended a faith-sharing group" (Tr. 15, 246, 250). The ALJ, however, also noted that Plaintiff reported having "some problems getting along with others and some problems with authority" (Tr. 15, 251). The ALJ concluded that the evidence supports "at most moderate limitations in social functioning" (Tr. 15). Indeed, the record reflects that medical providers found Plaintiff to be "warm and engaging" and consistently indicated that Plaintiff has a normal mood and affect (Tr. 319, 345, 383, 387, 421, 431, 564, 669, 686). Therefore the Court finds that the ALJ's determination that Plaintiff has moderate difficulties in social functioning is supported by substantial evidence.

8

### 3. Concentration, Persistence, or Pace

Third, the ALJ properly determined that Plaintiff has "moderate difficulties" with regard to concentration, persistence, or pace (Tr. 15). Specifically, the ALJ noted that, in her adult function report, Plaintiff indicated that "she needed reminders to care for her feet and [to] take her medication," and that "she [had] difficulty managing her finances, remembering, completing task, concentrating, understanding, and following instructions" (Tr. 15, 248-249, 251). Plaintiff's mother also testified that Plaintiff had difficulty completing school work and retaining jobs due to her problems with memory (Tr. 15, 57-58). However, as the ALJ indicated, Plaintiff also reported that "she prepared meals, helped care for her younger brother when her parents were away, helped care for a dog, drove, shopped for food and clothes, and helped teach Sunday school" (Tr. 15, 246-50). Therefore, the ALJ's determination that Plaintiff has moderate difficulties in the area of concentration, persistence, or pact is supported by substantial evidence. *See cf.* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (A claimant demonstrates impaired functioning by showing, for example, "a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation.").

In conclusion, substantial evidence in the record supports the conclusion that Plaintiff does not have marked limitations in her daily activities, social functioning, or concentration, persistence, or pace. Therefore, substantial evidence supports the ALJ's conclusion that Plaintiff's cognitive disorder did not equal listing 12.02.

### B. The Opinion of Dr. Naman Ghazal-Albar

As the ALJ's evaluation to Dr. Naman Ghazal-Albar's ("Dr. Ghazal-Albar") opinion impacts the ALJ's RFC determination, the Court will address this argument next. Plaintiff asserts that the ALJ erred in failing to give the medical opinion of treating physician, Dr. Ghazal-

Albar, controlling weight (Doc. 17 at 23). *See* 20 C.F. R. §§ 404.1527(c), 416.927(c); *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015). Indeed, "[a] treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Reece v. Colvin*, 834 F.3d 904, 908-09 (8th Cir. 2016) (internal quotations omitted). "Although a treating physician's opinion is usually entitled to great weight, it 'do[es] not automatically control, since the record must be evaluated as a whole.'" *Id.* at 909 (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "A treating physician's own inconsistency may undermine his opinion and diminish or eliminate the weight given his opinions." *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (internal quotation marks omitted). Whether the ALJ gives the opinion of a treating physician great or little weight, the ALJ must "give good reasons" for doing so. *Prosch*, 201 F.3d at 1013 (citing 20 C.F.R. § 404.1527(d)(2)).

On July 1, 2015, Dr. Ghazal-Albar completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) (Tr. 679-82). As indicated by the ALJ, in the report:

> [Dr. Ghazal-Albar] opined that the claimant could lift/carry less than 10 pound[s] occasionally or frequently; could stand for 5 minutes at a time; needed to be able to shift positions at will and walk for 5 minutes each time; could stand and walk approximately two hours total per 8-hour day; could sit for 30 minutes at a time and approximately two hours total per 8-hour day; needed to lie down at unpredictable intervals, approximately every 2-3 hours, during an 8-hour shift; could occasionally twist, stoop/bend, and climb stairs; could never crouch or climb ladders; could occasionally reach, handle, finger, feel, and push/pull; had to avoid all exposure to extreme cold, extreme heat, high humidity, fumes, odors, dusts, gases, soldering fluxes, solvents/cleaners, and chemicals; had to avoid moderate exposure to perfumes; would be absent more than four days per month; would be off task 25% or more of the work day; and would frequently need to take unscheduled breaks due to muscle weakness, chronic fatigue, and memory problems.

(Tr. 20 (citing *Id.*)). The ALJ afforded Dr. Ghazal-Albar's opinion "little weight" (*Id.*). The Court finds that the ALJ gave proper weight to the opinion of Dr. Ghazal-Albar. Although the

10

ALJ did not address all of the non-controlling factors found in 20 C.F. R. §§ 404.1527(c), 416.927(c), the ALJ is not required to cite specifically to the regulations but need only clarify whether he discounted the opinions and why. *Kientzy v. Colvin*, No. 4:15 CV 707 JMB, 2016 WL 4011322, at *8 (E.D. Mo. July 27, 2016) (citing *Grable v. Colvin*, 770 F.3d 1196, 1201-02 (8th Cir. 2014)). The ALJ found Dr. Ghazal-Albar's opinion to be inconsistent with the objective evidence and Plaintiff's prior ability to work with her impairments (Tr. 20).

First, the ALJ found Ghazal-Albar's opinion to be inconsistent with the objective medical evidence (Tr. 20). Indeed, as the ALJ noted, there is no objective evidence that Plaintiff had any strength defects (Tr. 20). In fact, Dr. Ghazal-Albar indicated no observed abnormalities during his musculoskeletal examinations of Plaintiff (*See, e.g.,* Tr. 384 ("Normal gait"), 388 ("Normal inspection and palpation of digits and nails; Normal gait"), 686 ("Normal gait")). Other providers also noted that Plaintiff exhibited full strength (*See, e.g.,* Tr. 616 ("normal appearance, full [Range of Motion] noted, normal strength, normal gait and station and normal digits and nails without clubbing or cyanosis")). Further, Plaintiff never indicated that she had difficulty sitting with any provider nor did she testify to such a limitation. In fact, when asked to identify her physical impairments, Plaintiff testified that her primary physical issues were being on her feet for extended periods of time and doing heavy lifting (Tr. 51-52).

Also, as the ALJ indicated, the objective evidence did not support Dr. Ghazal-Albar's conclusion that Plaintiff could only occasionally perform manipulation functions as there was no evidence that Plaintiff had any symptoms relating to the use of her upper extremities (Tr. 20). *See, e.g.,* Tr. 384, 388 (indicating normal musculoskeletal exams and not including any limitations regarding Plaintiff's upper extremities). Nor is there any medical evidence, contrary to Dr. Ghazal-Albar's opinion, that Plaintiff would need to avoid all exposure to various

11

environmental conditions in light of Plaintiff's normal respiratory and pulmonary examinations (Tr. 20, 384, 442). "An ALJ may reject a treating physician's opinion if it is inconsistent with the record as a whole." *McCoy v. Astrue,* 648 F.3d 605, 616 (8th Cir. 2011).

Second, the ALJ found Dr. Ghazal-Albar's opinion regarding Plaintiff's anticipated absences and need to lie down unsupported by the evidence that Plaintiff was able to work full time in the past with her impairments (Tr. 20). *Goff*, 421 F.3d at 792 (plaintiff continued to gainfully work after her allegedly disabling incident). Further, Plaintiff indicates that her decision to stop working resulted from her issues with memory not any physical limitations (Tr. 57).

Third, as addressed in more detail above, Plaintiff's activities of daily living are inconsistent with the extreme limitations indicated in Dr. Ghazal-Albar's opinion (Tr. 15). Indeed, Plaintiff reported doing some cleaning and the laundry, caring for her brother and the dog, and shopping for food and clothes (*See* Tr. 246-53 (Plaintiff's adult function report)). An ALJ may discount a treating physician's opinion when it is inconsistent with a plaintiff's activities of daily living. *Petty v. Colvin*, No. 4:13CV00172 JTK, 2014 WL 3734570, at *3 (E.D. Ark. July 28, 2014). *See also cf. Kroger v. Astrue*, No. CIV. 11-4012-KES, 2012 WL 5363479, at *2 (D.S.D. Oct. 30, 2012) (finding the ALJ inappropriately rejected the opinion of plaintiff's treating physician in part because the physician's opinion was consistent with plaintiff's activities of daily living).

Finally, Dr. Ghazal-Albar's opinion is primarily in the checklist format and a provider's checkmarks on a form are conclusory opinions which can be discounted if, as is the case here, contradicted by other objective medical evidence. *Stormo*, 377 F.3d at 805-06; *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). *See also Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011)

(holding that checkmarks on a Medical Source Statement are conclusory opinions which can be discounted if contradicted by other objective medical evidence); *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("'The checklist format, generality, and incompleteness of the assessments limit [the assessments'] evidentiary value.'... Indeed, '[a] treating physician's opinion deserves no greater respect than any other physician's opinion when [it] consists of nothing more than vague, conclusory statements.") (quoting *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001) and *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996)).

Accordingly, the ALJ properly offered a sufficient basis to give the opinion "non-*substantial* weight" in addition to "[non-]*controlling* weight." *Milam*, 794 F.3d at 983; *Papesh*, 786 F.3d at 1132 (emphasis in original) (internal citations omitted) (finding error when the ALJ offered no basis to give an opinion non-substantial weight; "For example, the ALJ did not find the opinion inconsistent with the record or another [of the physician's own] opinion[s].").

**C. RFC**

The Regulations define RFC as "what [the claimant] can do" despite her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney*, 228 F.3d at 863). *See also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013).

To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite her impairments. *Anderson v. Shalala*, 51 F.3d. 777, 779 (8th Cir. 1995). "Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (internal citations omitted). The Eighth Circuit clarified in *Lauer* that "[s]ome medical evidence . . . must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace[.]" 245 F.3d at 704 (quoting *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam) and *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)). Thus, an ALJ is "required to consider at least some supporting evidence from a professional." *Id*. *See also Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); *Eichelberger*, 390 F.3d at 591.

As previously discussed, the ALJ found that Plaintiff has the RFC to do sedentary work, except she can never climb ladders, ropes, or scaffolds; she can occasionally climb ramps and stairs; she can occasionally stoop, kneel, crouch, and crawl (Tr. 16). She must avoid working at unprotected heights and dangerous machinery (*Id.*). She must work in an environment with moderate or a lesser noise level, and is limited to simple routine tasks and simple work-related decisions (*Id.*). She can have only occasional interaction with the public and co-workers (*Id.*).

The Court finds the ALJ's RFC determination was based on substantial evidence. Specifically, as addressed in significant detail above, the ALJ properly addressed whether Plaintiff met listing 12.02 and properly evaluated the medical opinion of Dr. Ghazal-Albar. In

14

doing so, the ALJ conducted a complete and detailed analysis of Plaintiff's physical health records addressing Plaintiff's musculoskeletal abilities and activities of daily living including how these activities of daily living illuminated Plaintiff ability to function socially and her concentration, persistence and pace.

The ALJ also reviewed the objective medical evidence regarding Plaintiff's other impairments (*See* Tr. 17-19). First, the ALJ thoroughly evaluated the medical evidence of record regarding Plaintiff's cognitive difficulties (*See* Tr. 17-18). As noted by the ALJ, Plaintiff has a history of juvenile pilocytic astrocytoma[4] with surgery and radiation at age 6 (Tr. 17, 321). Results from a May 2012 neuropsychological examination indicated mild to moderate deficiency in word retrieval, moderate deficiency in verbal memory, moderate deficiency in visual memory, and some deficits in delayed recall (Tr. 17, 320). However, as noted by the ALJ, the Plaintiff was noted as having average verbal intellectual ability, intact visual and perceptual processing, intact processing speed, and intact executive functioning (Tr. 17, 320-21). MRIs of Plaintiff's brain in June 2013 and December 2013 showed post-operative changes with no masses or acute findings (Tr. 17-18, 438, 515-16).

---

[4] According to St. Louis Children's Hospital,

> Pilocytic astrocytoma is a benign brain tumor that grows slowly in the brain or spinal cord. "Pilocytic" means that the tumor is made up of cells that look like fibers when viewed under a microscope. "Astrocytoma" describes the type of tumor that begins in the brain or spinal cord in small, star-shaped cells called astrocytes. The tumor may be in the form of a cyst and rarely spreads into nearby tissues. Symptoms vary depending upon the size and location of the tumor. Most symptoms result from increased pressure on the brain and include headaches, nausea, vomiting, balance problems, and vision abnormalities.

Juvenile Pilocytic Astrocytoma, St. Louis Children's Hospital, http://www.stlouischildrens.org/diseases-conditions/juvenile-pilocytic-astrocytoma (last visited Mar. 14, 2018).

Second, The ALJ also addressed and reviewed the objective medical evidence regarding Plaintiff's hearing loss (Tr. 18), Plaintiff's chronic edema (Tr. 18), and Plaintiff's diabetes (Tr. 18-19) finding:

> [T]he objective evidence as a whole does not fully support the severity of the [Plaintiff's] alleged symptoms and limitations. The [Plaintiff] has a history of deep vein thrombosis in her right leg with residual edema in the leg and some evidence of coldness, discoloration, and loss of sensation. However, she has not had an episode of deep vein thrombosis or other blood clotting since before her alleged onset date. As for her diabetes, her blood sugars are variable at times. Nonetheless, she has required hospitalization on only a single occasion since her alleged onset date, and has not visited the emergency room for repetitive episodes of poor blood sugar control. Turning to her hearing loss, her medical records also indicate that this impairment [is] adequately controlled by use of hearing aids.

Plaintiff spends a substantial portion of her brief identifying records that support Plaintiff's allegations regarding these specific impairments (Doc. 17 at 17-23). Plaintiff also suggests that the ALJ failed to incorporate these impairments in his RFC determination (*Id.* at 19, 22). However, "[i]f substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence and even if we may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). Indeed, the ALJ specifically incorporated many of these physical impairments, going so far as to specifically identifying why he was limiting Plaintiff to only certain activities (Tr. 19). For example, he notes that "[g]iven [Plaintiff's] blood sugar variability and her alleged balance problems, the [Plaintiff] must avoid hazards such as unprotected heights and dangerous and moving machinery" (*Id.*).

Third, the ALJ addressed the other medical opinion evidence of record, finding the opinion of State agency psychologist Stanley Hutson, Ph.D. ("Dr. Hutson") that Plaintiff had no severe mental impairment entitled to "little weight" (Tr. 20, 74-95). Dr. Hutson completed case analyses on January 23, 2014 and indicated that Plaintiff's organic brain syndrome and affective

disorders were "non severe" (Tr. 78, 89). In doing so, Dr. Hutson noted that while Plaintiff was diagnosed with cognitive disorder NOS[5] and was identified as having mild to moderate deficits in visual memory, word retrieval, and verbal memory, that her cognition was otherwise intact and "[h]er mental disorders are not severe" (Tr. 79). The ALJ found that Dr. Hutson never examined or treated the Plaintiff and that "[Plaintiff's] neuropsychological test results clearly indicate that Plaintiff suffers from a cognitive impairment with limitations in memory and recall" (Tr. 20, 320). *Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007) (finding the ALJ did not err in considering State agency psychologist's opinion along with the medical evidence as a whole).

Fourth, the ALJ reviewed the third party reports submitted by Plaintiff's parents, affording them "some weight" (Tr. 19, 238-45, 526-29, 530-33). The ALJ noted that Plaintiff's parents live with Plaintiff, have known her throughout her life, and are well aware of her abilities and limitations (Tr. 19). While the ALJ found Plaintiff's parents' statements regarding Plaintiff's activities of daily living to be consistent with her own reports, he found that their statements regarding Plaintiff's fatigue, excessive sleep, and memory problems not to be consistent with her ability to work in the past and the lack of any evidence of significant changes since then rendering her unable to do so (Tr. 19-20). Indeed, there is very little medical evidence of record that Plaintiff's neurological condition has changed since she stopped working. Nicole Werner, Ph.D., a clinical neuropsychologist, indicated in a May 21, 2012 neuropsychological report, "It is possible . . . that her deficits in these areas [(word retrieval and memory retrieval)] have declined over time which cannot be determined due to my inability to directly compare[] test results . . . . Her poorly controlled diabetes may be the reason for a decline *if* one exists" (Tr. 321) (emphasis added). In fact, as a result of her analysis, Dr. Werner recommended that

---

[5] Not otherwise specified.

Plaintiff seek out vocational rehabilitation (Tr. 322). Further, while a repeat neuropsychological assessment was recommended by Dr. Werner to determine whether Plaintiff indeed shows signs of a progressive neurologic condition, the record does not indicate that any additional testing was performed (*Id.*).

Finally, in addition to the objective medical evidence and the medical opinion evidence of record, the ALJ also properly evaluated Plaintiff's credibility. *See Wildman*, 596 F.3d at 969 ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010). In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). Here, after a thorough review of the medical evidence, the ALJ found "the objective evidence as a whole does not fully support the severity of the [Plaintiff's] alleged symptoms" (Tr. 19). Indeed, while medical providers reported cognitive difficulties, they were fairly mild, including mild deficits in word retrieval and verbal memory (Tr. 320, 425-427). MRI Examinations noted post-operative changes without any acute findings (Tr. 438, 515-16). And, as noted by the ALJ and addressed in more detail above, Plaintiff's work history and activities of daily living "also cast doubt on the alleged veracity of the [Plaintiff's] allegations" (Tr. 19).

In conclusion, the Court finds that the ALJ's RFC determination is consistent with the relevant evidence of record including the objective medical evidence, the observations of medical providers, and diagnostic test results, as well as Plaintiff's credible limitations; that the ALJ's RFC determination is based on substantial evidence; and that Plaintiff's arguments to the contrary are without merit.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 23rd day of March, 2018.

                                            /s/ Noelle C. Collins
                                            NOELLE C. COLLINS
                                            UNITED STATES MAGISTRATE JUDGE